Good morning. I'm sorry, I can't hear a thing. Wait a minute. You've got to put that mic over there. Thanks for the heads up, Judge Silverman. We had the mic in the wrong place. Okay. Good morning. Morning. While this case does revolve around reinstatement of removal provisions of the Act at 241.85 and the regulations at 241.8, it is a very unique fact pattern we have in this case, which does set it apart from Padilla and from Alvarenga v. Lobos. In this case, we have a woman who came into the United States in 1997. She was given an in absentia notice in January 1997 ordering her deportation. However, she never had notice of her hearing. In fact, there was a change of venue made by the Immigration Service from Harlingen, Texas, to Miami, Florida. The notice that was sent to her was returned, and that is in the record indicating that it was attempted not known address. She then, it was required at that time, under 242B of the Act, that there be a registered mailing of the notice of hearing. That was not received by Ms. Funes either, and there's no record indicating that was served by certified mailing. An immigration judge, nonetheless, has found that the order to show cause was served on her. That is not sufficient under the notice provisions of the Act, and all of these issues are before the Board of Immigration Appeals still to date. She appealed directly in the only manner available to her by a motion to reopen to the immigration judge. It wasn't until December of 2002, three days after our habeas, rid of habeas with the district court, that she finally did deny that in a handwritten notation on a form order. That is on appeal with the Board, and we have not gotten an answer yet. She further- So that's on appeal to the Board, and then presumably after that, if you don't get relief, you would take that up to the circuit directly? That's correct. Okay. It could very well be that to hold your decision in advance for that would make sense in this case in judicial economy. Further, however, when she came into the United States in 1998 in September, she was still unaware of an in absentia order against her. At that time, she was told that they could reinstate an order against her, and there was a notice of intent to reinstate. However, she was allowed, as it is provided under the regulations, a 241.8B to make a statement contesting that reinstatement. Under that same provision, the officer can then reconsider the intent to reinstate. In this case, what then happened is she was put on supervised release. She remained on supervised release and has been reporting every month for the last five years and more since September 1998 to date. She was given her son was put into proceedings. He has his hearing in February of next year. That supervised release was initially for that purpose, at least that's my understanding. She was then given temporary protected status, or at least she applied for temporary protected status and held that protection for two years and was given work authorization. She continued to work. She carried on with her life understanding that she had been permitted to stay and that the reinstatement was not going to happen. She then continued with work. She married a U.S. citizen. She has two children with him, one of whom is a U.S. citizen, one of whom is in proceedings, and she has a third child due next month, as a U.S. will presumably be a United States citizen as well. She was married in 2001. The visa petition was approved by the Immigration Service, but for the service now relying on this notice of intent to reinstate in 98, she would be eligible for adjustment of status. What happened is she went ahead and applied for adjustment of status. At that interview, she was told that no, in fact, that could not happen. There was a reinstatement that they wished to reinstate the removal order, as they had indicated, in 1998. This was done in, I believe, November of 2002. She then received a beg and baggage notice to leave under this 1997 in absentia order in August of 2003. The issue in this case, therefore, is that even under the regulations, this Immigration Service seems to have reconsidered any intention to go ahead with the reinstatement. Secondly, perhaps if they have decided not to go forward with that, this should be equitably told, perhaps, given the five years of actions which indicated to her to carry on with her life, if not equitable estoppel, equitable tolling to permit adjustment of status, and at least for the board to decide the original in absentia order that was issued against her, which she has contested in the only way possible to her. Another issue in this case would be that there is certainly a due process violation to not allow her a hearing under the reinstatement provision, given that she has taken all means to contest that underlying order and that she has been permitted to stay for five years, so much so that she's married as U.S. citizen children and has been approved for a visa petition as an immediate relative. The final issue could be that, in fact, this order was entered prior to April 1997, which is prior to the date that this Court has relied on in Castro-Cortez. The order was entered in January 1997. She did depart without knowledge of that order in March of 1997. She returns after April 1997, but I would argue that under Castro-Cortez's reasoning that nonetheless the statute should not apply retroactively and that her conduct in departing not knowing it was under an unlawful, under a deportation in absentia order in March of 1997 should not trigger the reinstatement provision that takes effect in April 1997. I take it that's part of your BIA motion as well, though, isn't it? The reinstatement is not part of the motion with the Board. It's a motion to reopen in an absentia order, which is now on appeal. Play that out for me. Let's say you're successful in that. Then what's your next step? Should the Board reopen the case, she would be eligible and her application for adjustment of status is attached to that appeal. I'm sorry, that is a direct appeal. Right. And she would have presumably a chance to have her adjustment of status adjudicated without the bar of a reinstatement. Right. But in the interim, there's nothing unless the Board exercises this discretion that she would be deported in the interim, if absent the habeas action. There is an automatic stay attached to this means of appealing in an absentia order, and that stay remains in place as long as it's pending with the Board. Whether the service would honor that given its arguments on reinstatement is not clear. When was that motion to reopen filed? I'm sorry, I didn't hear it. I'm sorry, when was the motion to reopen the in absentia order? When was that filed? That was filed in 2002, I believe, June 1st. That's just pending? Yes, it was denied by the immigration judge in December 2002, three days after the district court decision, and we took that on appeal to the Board. So you're just waiting to hear from the Board on that? That's correct. Thank you. You have about a minute and a half left. Do you want to reserve it for rebuttal? Yes, sir, I would, Your Honor. Thank you. Listen to what the government might have to say. Good morning, Mr. Olson. Haven't seen you for a while. I'm sorry, I can't hear you. Something's not working right. Adrian, could you move the mic a little closer? How about now? Can you hear me now, Judge? I can hear you, yes. Okay. I think the microphone was turned off. Okay. I want to clarify one point before briefly responding to the three claims that the petitioner raises in her habeas petition. It appears that a number of the arguments that are presented today go to the validity of the original deportation order in January of 1997 and the reinstatement of that prior order in September of 1998. But the only place to make those arguments is in a petition for review to the Ninth Circuit from the reinstatement order. And that's not what this is. This is a habeas petition. And the fact that the only place to raise those arguments in a petition for review with the Ninth Circuit is clearly stated in Castro-Cortez. So for purposes of this appeal, I would argue that you have to presume the validity of the reinstatement order and then address the primary arguments that the petitioner raises in her habeas petition, those being whether or not the INS can rely on a reinstatement order to deny an application for adjustment of status. Let's assume you're right about that. But what do we do about the fact that the motion to reopen is pending before the board? I think that's exactly what the petitioner should do, is file a motion to reopen with the board alleging that there's some error in the validity of the in absentia order. So should we just hang on to our case and just see how that plays out? And see how that plays out. But I don't think there's any reason to stay this appeal pending the motion to reopen before the BIA because the habeas petition concerns solely the denial of the application for adjustment of status. The arguments are not do not go to the validity of the original order of deportation in 1997 or the reinstatement of that order in 1998. They're completely separate issues. They are, in a sense. But let's assume that the board grants relief. Is she now foreclosed from contesting this denial of the adjustment of status? Well, I'll have to think that out myself as we talk. I guess if the BIA grants the motion to reopen and says that the original in absentia order is invalid, then presumably the reinstatement based on that original deportation order would be rescinded and would be back at square one. At this point, there's been no finding by anybody that the original order of deportation is invalid or, therefore, that the reinstatement order is invalid. No, I understand that. It just seems to me that someone, not you, it would be someone from the INS, may appear before us in a couple of years and saying, well, she had her shot adjustment of status. That's already been foreclosed before the Ninth Circuit. So even if the original order is now held to be invalid, she can't adjust the status. She's exhausted her appeals on that. I guess that's the question that we perhaps ask in a different way than Judge Silverman asked it. Right. And I don't want to speak definitively on how the INS would proceed on an application for adjustment of status that was denied based on a reinstated order in light of the fact that maybe at some point the reinstatement order would be rescinded. The INS in this case didn't address the merits, really, of the adjustment of status application. It just said in light of the reinstatement order, under the reinstatement statute, you cannot apply for relief. So, you know, it wouldn't be as though the INS would be asking the INS to reconsider its discretionary determination on the denial of the application. But I'm hesitant to say what the INS would do if down the line. Well, the troubling thing is that if we examine it piecemeal, it may lead to a different result than if we examined the whole case in its entirety, because the in absentia proceeding may well be valid. But in terms of this present context, when you're talking about a facially valid motion for adjustment of status, based on an in absentia order that she said she didn't receive becomes a little more troubling. Married to U.S. citizen, citizen children, et cetera. Right. I understand your concerns. I will say, just sort of backing up a step, in light of the allegation that she was not aware of the deportation order, we're not contesting that, but I will say that she was aware that she had been placed in a deportation proceeding. Right. She received an order to show cause. She received – she provided an address in Florida. She knew that at some point she would have a hearing. She may not have received the hearing notice. It's her obligation to keep the INS apprised of her current address. So it's not as though she had no indication that there was a deportation proceeding and left the country completely unaware of the fact that she was at least in proceedings. Mr. Olson, I'm trying to figure out what we should do about the pending motion to reopen. Would you think we should go ahead and decide this case but hold the mandate until the motion to reopen has been resolved? Would that be – would that make sense? Yeah. What I would propose, Judge, is that the panel decide the case, and I wouldn't even suggest withholding the mandate. What keeps her from getting deported in the meantime? Well, the petitioner is saying that there's an automatic stay in effect. I can't confirm that, but I'll accept the petitioner's statement as true. And in that case, there's really no danger. If there's an automatic stay in effect by the BIA given a motion to reopen from an in absentia order, she won't be removed. I guess without knowing what the stay is conditioned on, if that's a stayed condition on this appeal or if it's stayed conditioned on the motion to reopen or what? Presumably the stay is conditioned on the motion to reopen. It has nothing to do with the pending habeas petition. So I would not even – I wouldn't suggest that the panel should withhold the mandate if the panel were to deny the habeas petition. And if I could just briefly respond to the three claims made by the petitioner. In Padilla, this Court recently upheld the INS's authority to rely on the reinstatement statute to deny an application for adjustment of status. So it really disposes of the arguments that the petitioner raises in the habeas petition in reliance on the Prado-Hernandez case from the Western District of Washington. In that case, the alien's I-45 application was denied on the grounds that the alien had illegally reentered the United States after being removed and under the reinstatement statute was ineligible to apply for adjustment of status. So that issue was squarely addressed by Padilla. The second argument that the petitioner raises is that 8 U.S.C. section 1231A5, the reinstatement provision, cannot be applied to her because her original deportation order was entered prior to the effective date of the statute. But Castro-Cortez, the case upon which she relies, simply holds that that statute cannot be applied to an alien who reenters the country before the effective date of the statute. It does not hold that it can't be applied to a petitioner, like in this case, where the original deportation order is entered prior to the effective date but then enters afterwards. And, in fact, this issue was actually addressed by the Ninth Circuit in a case called Gallo-Alvarez v. Hashcroft. It's an opinion written by Judge Thomas, 266, Fed 3rd, 1123. And the Court specifically said that the reinstatement statute, quote, applies to situations in which predicate order of deportation was entered prior to the 1996 revisions of the immigration law. So I think that claim is also squarely, has been squarely addressed by the Ninth Circuit and not in her favor. And then finally, the petitioner argues in the habeas petition that the INS, now ICE, should be equitably stopped from denying her application for adjustment of status. But I think this argument fails primarily because she hasn't shown any affirmative misconduct on behalf of the government. The I-45 was filed after her reinstatement order, not before. She was married after the order was reinstated. The I-130 visa petition was filed by her husband afterwards. So if she had an expectation somehow that the INS down the line would grant her application for adjustment of status, it wasn't a reasonable expectation. She knew she was subject to the reinstatement order and that she was not immediately removed from the country after the order was reinstated because her son was in removal proceedings. So any expectations she may have had I think are unreasonable, and they certainly don't rise to the level of a deliberate lie or a pattern of false promises that was discussed in the Sulit v. Shiltson case, which is 213 Fed 3rd, 449. So I would argue that the claims that she's raising in her habeas petition are related to the reinstatement provision or the reinstated order, but she's not challenging and cannot challenge the reinstatement order here. And she's following the course of action, the only course of action that the Immigration and Nationality Act provides by filing a motion to reopen. And she didn't file a petition for review from the reinstatement order itself. And in that case, she could have raised some of the arguments that she's trying to raise today. Roberts. Thank you. Thank you, Mr. Olson. Rebuttal. To address each of those points, first of all, I would most certainly ask that the Court hold an abeyance or at least hold a mandate given that dealing with this in a peaceful way. Is there a stay in effect, right? There is a stay for a motion to reopen in an absential order. Whether or not, given the reinstatement provisions, the service will honor a stay for a motion to reopen where they're saying there's no entitlement to that under the reinstatement provisions is not clear to me. Who issued the stay? The stay is a regulatory stay on a motion to reopen. And then the Board has held in a case law, Rivera-Claros, that that would continue on an appeal to the Board. Well, there's no stay that's been issued. Nothing has been issued. Right. You're just saying you're entitled to one under the regulations. Exactly. Furthermore, so I would certainly beseech the Court to hold its decisions on this until it can be heard all at one time. Certainly the overlap between the reinstatement and here, Ms. Funes has challenged the three requirements of a reinstatement in that the second provision is that she has conceded that she was properly removed. She has not conceded that. This is not Padilla, in which the Court found all three requirements had been conceded. She is still challenging it, and it's still pending. Very much requires that this be held and that this all be reviewed in one hearing. Secondly, with Padilla, that can be distinguished because, again, the Ninth Circuit Court did rely on the fact that she had conceded her prior removal and her reentry after a prior removal, and here this is not the case. She was not given notice. It was not a lawful removal. She's contested that. Castro-Cortez, while it did not address, it went only as far as addressing a reentry prior to April 97, it wasn't dealing with the facts that are present in this case, which is a order and a departure prior to April 1997. I know that Gallagher — The logic still applies, don't you think? Well, I think the — yes, exactly. I think the logic that it's having a retroactive effect under the Landgraf analysis and under even the reasoning in St. Cyr from the Supreme Court that has a retroactive effect where she had no notice of what would be the consequences upon her departure and return. So how do you deal with Gallagher? Well, Gallagher, I understand that the Court did find that Castro straightforwardly said it deals only with a reentry prior to April 1997, and that somehow that therefore foreclosed any further argument on the issue. There was really not any discussion on that point in Gallagher-Alvarez. No, because it seems sort of obvious, I think, after Castro, I think. Well, certainly Castro dealt with a specific set of facts in which there was not a departure and order prior to April 1997, so they didn't need to deal with those facts. The legal arguments of a retroactive consequence, I think, remain and need to be carefully applied to the facts that we have here with a departure and reentry — I'm sorry, a departure and order prior to April 1997. I think that the arguing under Landgraf and St. Cyr, you would still have a retroactive consequence without notice, which would be a constitutional violation under the due process clause. Tell me, what has been the service's response to your motion to reopen? I take it they oppose it. They have opposed it. We recently received an opposition, and in there they simply say that she was given all the notice that was required, and it's a — Didn't take a petition for — you didn't appeal the original reinstatement, and therefore your rights on motion to reopen are somewhat lessened, I take it? I did not say that. It just simply said that notice was provided and the judge was correct, and they should have pulled the decision of the judge. Again, and finally, on the affirmative misconduct standard that the Immigration Services held us to under equitable estoppel, there is an alternative argument that it's equitable tolling, which does have not quite such a high standard. Rather, you need to show that there was a reasonable reliance, and with due diligence you could not have discovered the information necessary, and you relied on the actions of the service to carry on with your life. So that equitable estoppel requires affirmative misconduct, which has been held to be outright false lies. We really don't have that here, do we? You'd have to concede that you don't have equitable estoppel. But I would argue we could have an equitable tolling argument, given that there's a lesser standard on that in which reasonable diligence on the part of Ms. Funes to discover that she could not stay here for the five years she stayed here, when in fact the service allowed her to do that. How could she have been discovered otherwise that she could not do that and could not go ahead and carry on with her life? So that the equitable tolling argument, I think the facts would certainly rise to that level, sufficient to say she should have a chance to have her adjustment status application considered. And finally, the service has fully insisted that she has received a reinstatement order. That is just not clear to me. Under the reg – and I – perhaps this is – I'm contesting the constitutionality of the regulations, if not the statute. The regulations have a very specific provision in a very short paragraph at 241.8b that you can contest the service's decision to – or intent to reinstate, and then that the officer may reconsider that – given that statement. That's what happened in this case. Perhaps it's not that it's unconstitutional. It's that even under these regulations, she abided by and was granted the right to make a statement to contest. The service reconsidered it, so much so that they allowed her to stay for five years and did not initiate an act on an order of reinstatement. They did a notice of intent and didn't follow through. So, in fact, there is no reinstatement order that was finally provided. It's not until the service denies the adjustment of status – and even in that decision, they do not say that there was a reinstatement order. They never say that. They say that it is – that the reinstatement could be issued against her, as if there has been no order entered. What happened on September 28, 1998? Ms. Funes came into the United States and was stopped at the – No, that was the 27th. On the 28th, didn't they issue a reinstatement order? They gave her a form that's called a notice of intent slash order. And on that, it explains that she can make a statement contesting, and there's a box to check what she did. On the bottom of that, an officer says that he intends to order reinstatement. Attached to that is her statement, which has the same date. Although she speaks Spanish, it does say it was translated to her. It's in English. But on there, she says she voluntarily – Right, and that's called decision, order, and officer certification. You don't regard that as a reinstatement? Well, it's not clear to me, given that the regulation allows her to make a And then, in fact, allows her to stay for five years on supervised release, allows for a temporary protected status, accepts her $1,000 penalty fee to apply for adjustment of status given an approved visa petition. And she did make her statement, which is also attached to it, didn't she? That's correct. I'm afraid that's usually the way it occurs, isn't it? That that is the sum and substance of the procedure. Are those regulations sufficient to deny someone the full – No, but that was the issue in Gallo-Alvarez, which we sent down for the district court to explore under the peculiar situation there. Troublesome, but that's the way it works. In Gallo-Alvarez, had she contested and gone as far as appealing the decision of the judge, denying the motion to reopen? All right. All right, Ms. Peterson. We can see you're way over your time. Thank you very much. Thank you, sir. Thank both counsel. This case is submitted for decision. Next case on the argument calendar. A habeas case. Brown versus Garcia.
judges: Tashima, Thomas, Silverman